UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TINA DIANNE MITCHELL,

      Petitioner,

                                Case No.  3:12cv356/LC/CJK

MICHAEL D. CREWS,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 19).  Petitioner replied.  (Doc. 24).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

By amended information filed in Escambia County, Florida Circuit Court Case No. 09-1710, petitioner was charged with two counts of grand theft - over $100,000 (Counts 1 and 2), three counts of grand theft - over $20,000 but less than $100,000 (Counts 3, 4, and 5), two counts of money laundering - financial transactions totaling $20,000 but less than $100,000 (Counts 6 and 10), and three counts of money laundering - financial transactions totaling or exceeding $100,000 in any twelve-month period (Counts 7, 8, and 9). (Doc. 19, Ex. F).[1]  The State declined to prosecute Count 6. (Ex. G).  On February 16, 2010, petitioner entered a written plea and sentence recommendation ("plea agreement"), pursuant to which she agreed to the factual basis to the charges as set forth in the plea agreement, and agreed to plead no contest to the charges with no agreement as to a recommended sentence.  (Ex. H). The court conducted a plea colloquy and accepted petitioner's plea.  (Ex. I).  By judgment rendered March 15, 2010, petitioner was adjudicated guilty and sentenced to a term of thirty years in prison on Count 1, a term of thirty years of probation on each of Counts 2, 7, 8, and 9, to run concurrently with each other and consecutively to the sentence on Count 1, and a term of fifteen years of probation on each of Counts 3, 4, 5, and 10, to run concurrently with each other and with the sentence on Count 2.  (Exs. J, L).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed the judgment of conviction without a written opinion, on November 16, 2010.  *Mitchell v. State*, 49 So. 3d 238 (Fla. 1st DCA 2010) (Table) (copy at Ex. P). The mandate issued December 14, 2010.  (*Id.*).

---

[1]All references to exhibits are to those provided at Doc. 19, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Petitioner filed various applications for postconviction relief, but relevant here are the motions identified following.  On December 8, 2010, petitioner filed a motion to reduce sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. Q).  The state circuit court granted the motion and reduced petitioner's sentence on Count 1 to twenty years in prison followed by ten years of probation.  (Ex. R).  An amended judgment was rendered on March 15, 2010.  (Ex. S).

On May 18, 2011, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. T).  The circuit court summarily denied relief in an order rendered on June 13, 2011.  (Ex. U).

On June 1, 2011, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. V).  The state circuit court struck the motion as facially insufficient on August 8, 2011, with leave to file a facially sufficient motion "within a reasonable time."  (Ex. W).  On November 8 2011, petitioner filed an amended motion for postconviction relief.  (Ex. X).  The circuit court summarily denied the motion in an order rendered on December 20, 2011.  (Ex. Y).  The First DCA per curiam affirmed on May 14, 2012, without a written opinion. *Mitchell v. State*, 88 So. 3d 154 (Fla. 1st DCA 2012) (Table) (copy at Ex. CC).  The mandate issued June 11, 2012.  (*Id.*).

Petitioner filed her federal habeas petition in this court on July 16, 2012.  (Doc. 1, p. 9).  The petition raises six grounds for relief.  (Doc. 1).  Respondent filed an answer asserting that petitioner is not entitled to relief on Grounds One, Two, Four, Five, and Six, because the state court's adjudication of those claims was not contrary to, or an unreasonable application of, clearly established federal law.  (Doc. 19, pp.

13-20, 31-51).  Respondent asserts that Ground Three is procedurally defaulted and, alternatively, without merit.  (*Id.*, pp. 20-31).

SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate

conclusion, not the reasoning that led to it.   *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state

court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this

standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

Ground One        "Dual convictions for Grand Theft and Fraud/Money Laundering violate the constitutional prohibition against double jeopardy." (Doc. 1, p. 5).

Petitioner alleges the following in support of her claim:

> Mitchell was charged with multiple counts of Fraud/Money Laundering and Grand Theft. The offenses were committed during a single criminal episode, and the charges are premised on allegations arising from the same course of criminal conduct. The State and Federal Constitutions prohibit . . . convictions and sentences for multiple crimes based on the same criminal act.

(Doc. 1, p. 5). Petitioner asserts she raised this claim in her amended Rule 3.850 motion and on appeal from the circuit court's order denying the motion. (*Id*., pp. 5-6).

Respondent concedes that petitioner presented this claim to the state courts in her amended Rule 3.850 motion and related appeal, and that the state courts adjudicated the claim on the merits. (Doc. 19, pp. 13-16). Respondent argues that petitioner is not entitled to federal habeas relief because the state courts correctly identified and reasonably applied the clearly established federal standard in rejecting the claim. (*Id.*, pp. 16-18).

A.      Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth

Amendment.  *See Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).   The Double Jeopardy Clause embodies three separate guarantees:   "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense."  *Justices*, 466 U.S. at 307-08 (citation and footnote omitted).  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 689, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution."); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (noting, "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.").

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense."  *Garrett v. United States*, 471 U.S. 773, 778, 105 S.

Ct. 2407, 85 L. Ed. 2d 764 (1985).  Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so "'in the absence of a clear indication of contrary legislative intent.'"  *Hunter*, 459 U.S. at 366 (*quoting Whalen*, 445 U.S. at 691-92); *see also Garrett*, 471 U.S. at 779, (holding that multiple punishments are permissible "when the legislative intent is clear from the face of the statute or the legislative history"); *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) ("[I]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end.").  If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."  *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).  Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes.  *Hunter*, 459 U.S. at 368.

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis.  First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct.  If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply.  If there is no clear

indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of *Blockburger*. Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

*Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996).

B.    Federal Review of State Court Decision

Petitioner raised this double jeopardy claim as Ground One in her amended Rule 3.850 motion. (Ex. X, pp. 37-40). The state circuit court denied relief as follows:

Defendant here claims that her convictions for grand theft and for money laundering violate the constitutional prohibition against twice putting a defendant in jeopardy for the same crime. Defendant alleges that one of the convictions must therefore be vacated.

The test in Florida for determining whether two convictions that arise from a single criminal episode[FN 5] violate the prohibition against double jeopardy is set out in section 775.021 of the Florida Statutes. Offenses do not implicate double jeopardy concerns if "each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial." Section 775.021(4)(a), Florida Statutes (2006)[FN 6]

[FN 5:  The first step in the double jeopardy analysis is determining whether the offenses occurred during the same criminal episode, and, if so, whether the offenses are based upon the same acts. See Partch v. State, 43 So. 3d 758, 760 (Fla. 1st DCA 2010). For sake of argument, the Court accepts Defendant's assertion, without deciding, that the offenses occurred in the same criminal episode.]

[FN 6:  Section 775.021 of the Florida Statutes includes three exceptions to this basic rule, none of which apply in

this situation.  <u>See</u> section 775.021(4)(b), Florida Statutes (2006).]

The statutory elements of theft are as follows:

A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:  (a) Deprive the other person of a right to the property or a benefit from the property. (b) Appropriate the property to his or her own use or to the use of any other person not entitled to the use of the property.

<u>See</u> section 812.014(1), Florida Statutes (2006).  The relevant portion of the money laundering statute states,

It is unlawful for a person:  Knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, to conduct or attempt to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity:  1. With the intent to promote the carrying on of specified unlawful activity; or 2. Knowing that the transaction is designed in whole or in part:  a. To conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or b. To avoid a transaction reporting requirement or money transmitters' registration requirement under state law.

Section 896.101(3)(a), Florida Statutes (2006).

In this case, it is clear that each offense requires proof of an element that the other does not.  To commit theft, the offender must intend to deprive another of property or to appropriate property improperly to his or her own use.  The money laundering statute does not require that the offender intend to deprive another of property or to

use property without permission.  Rather, to commit the offense of money laundering, the offender must conduct a financial transaction designed to promote or conceal the unlawful activity.  The statute does not require that the unlawful activity be theft; the money or property could be derived from illegal gambling, sales of illicit drugs, or myriad other unlawful activities.

Based upon these considerations, the Court does not find that Defendant's convictions for both grand theft and money laundering violate the prohibitions against double jeopardy.  See generally State v. Jacob, 607 N.W.2d 679, 688 (Iowa 2000).  This allegation cannot entitle Defendant to relief.

(Ex. Y, pp. 67-68).  Petitioner appealed, raising this issue as Issue 2 of her initial brief.  (Ex. AA, pp. 4-5).  The First DCA affirmed the lower court's decision without opinion.  (Ex. CC).

The legal standard applied by the state court, namely, Florida Statutes § 775.021, was not contrary to clearly established federal law, as the statute essentially adopts the *Blockburger* test.[3]  *See State v. Weller*, 590 So. 2d 923, 925

---

[3]Florida Statutes section 775.021 provides, in relevant part:

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.

(2) The provisions of this chapter are applicable to offenses defined by other statutes, unless the code otherwise provides.
. . . .

(4) (a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading

(Fla. 1991).   In evaluating whether the state courts reasonably applied the *Blockburger* standard in adjudicating petitioner's claim, this court must defer to the state circuit court's interpretation of Florida law, including the court's interpretation of the elements of Grand Theft and Money Laundering, whether the offenses are degrees of the same offense, and whether the elements of either offense are necessarily subsumed by the other.  *See Hunter*, 459 U.S. at 368; *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) ("A state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted);*Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).

---

or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2003).  Based on this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense she commits during the course of a single criminal episode, with three exceptions to that rule.  Fla. Stat. § 775.021(4)(b).

Accepting the state court's determination that Grand Theft and Money Laundering each requires proof of an element that the other does not, as well as the state court's determination that none of the exceptions set forth in Florida Statutes § 775.021(4)(b) apply (*i.e.,* the offenses do not require identical elements of proof; the offenses are not degrees of the same offense as provided by statute, and neither offense is a necessarily lesser included offense of the other), petitioner failed to demonstrate a double jeopardy violation with regard to her convictions for Grand Theft and Money Laundering.

Because petitioner failed to demonstrate that the state courts' adjudication of her double jeopardy claim was "contrary to, or involved an unreasonable application of," *Blockburger*, she is not entitled to federal habeas relief on Ground One.

Ground Two  "Trial Counsel was ineffective because he failed to explain the double jeopardy defense to Petitioner before she rendered her plea." (Doc. 1, p. 6).

Petitioner alleges the following in support of her claim:

> Counsel has a duty to familiarize himself with the facts of the case and the charges charged in the information. He had a duty to investigate any meaningful defense to the charges and to protect the interests of the Petitioner. Counsel obviously failed to familiarize himself with the facts and laws that were pertinent to the Petitioner's plea and disposition of the case. Counsel could have and should have known that multiple convictions and sentences for the same criminal act are prohibited by the constitutional bar against double jeopardy. Nevertheless, counsel urged the Petitioner to tender a plea of no contest to offense [sic] obviously precluded from prosecution by the bar against double jeopardy. This increased the total sentence points on Mitchell's guidelines scoresheet, resulting in a higher minimum permissible sentence.

(Doc. 1, p. 6). Petitioner asserts she raised this claim in her amended Rule 3.850 motion and on appeal of the circuit court's order denying the motion. (*Id.*).

Respondent concedes that petitioner presented this claim to the state courts in her amended Rule 3.850 motion and related appeal, and that the state courts adjudicated the claim on the merits.  (Doc. 19, pp. 19-20).  Respondent argues that petitioner is not entitled to federal habeas relief because the state courts correctly identified and reasonably applied the clearly established federal standard in rejecting the claim.  (*Id.*, pp. 206-21).

A.     Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  *Lafler*, 132 S. Ct. at 1387.  The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations.  *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "'"that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (*quoting Strickland*, 466 U.S. at 688).   The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . .  Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70, 90 S. Ct. at 1448.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57

(*quoting McMann*, 397 U.S. at 771).   Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial."  *Id.*  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant.  *Id.*  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

*Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of her amended Rule 3.850 motion. (Ex. X, pp. 41-43). The state circuit court cited the *Strickland* standard as the applicable legal standard. (Ex. Y, pp. 69-70). The court denied relief on the merits as follows:

> In this ground, Defendant alleges that her attorney was ineffective for failing to recognize and advise her of the fact that the convictions for grand theft and money laundering would violate double jeopardy protections. As the Court has already explained, these two convictions do not violate the constitutional prohibition against double jeopardy;

hence, counsel was not ineffective for failing to advise Defendant of an incorrect legal conclusion.  This allegation cannot entitle Defendant to relief.

(Ex. Y, p. 70).  Petitioner appealed, raising the issue as Issue 3 of her initial brief. (Ex. AA, p. 5).  The First DCA affirmed without opinion.  (Ex. CC).

As previously discussed, in analyzing petitioner's double jeopardy claim raised in Ground One, the state court determined that the exceptions set forth in Florida Statutes § 775.021(4)(b) did not apply, meaning, the offenses of Grand Theft and Money Laundering did not require identical elements of proof, they were not degrees of the same offense as provided by statute, and neither offense was a necessarily lesser included offense of the other.  Deferring to the state court's interpretation of state law, counsel's failure to advise petitioner she had a viable double jeopardy defense was not deficient, and petitioner cannot show she was prejudiced by counsel's conduct.  The state court did not unreasonably apply *Strickland* in denying petitioner's ineffective assistance of counsel claim.

Ground Three        "Trial Counsel was ineffective because he failed to investigate Petitioner's mental health history."  (Doc. 1, p. 6).

Petitioner alleges the following in support of her claim:

Petitioner had a significant history of Bipolar Disorder which played a huge role in the crimes at issue.  If counsel had investigated her mental health history and treatment records, he could have prepared a meaningful defense and the Petitioner could have and would have elected a trial by jury.

(Doc. 1, p. 6).  Petitioner asserts she raised this claim in her amended Rule 3.850 motion and on appeal from the circuit court's order denying the motion.  (*Id.*).

Respondent asserts this claim is procedurally defaulted.  (Doc. 19, pp. 25-29). Respondent concedes that petitioner presented this claim – a claim that counsel failed

to prepare a defense of mental illness or diminished capacity – to the state circuit court in her amended Rule 3.850 motion, and that the state court adjudicated the claim on the merits.  (Doc. 19, pp. 21-22).  Respondent contends that petitioner presented a fundamentally different argument on appeal to the First DCA by arguing for the first time that investigation by defense counsel into her mental health history would have produced evidence supporting an <u>insanity defense,</u> specifically, that she <u>was incapable of distinguishing right from wrong at the time of the offenses</u>.  (*Id.*).  Respondent contends petitioner's having presented a very different argument on appeal renders the claim she presents in Ground Three of her federal habeas petition unexhausted and procedurally defaulted.  (*Id.*).  Notwithstanding the failure to exhaust, respondent argues petitioner's claim is without merit.  (*Id.*, pp. 30-31).

A.     Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).   The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.   A claim that was not fully exhausted in state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.   *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.   *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).   "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."   *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).   The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).   "To establish the

requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

In "Ground Three" of petitioner's amended Rule 3.850 motion, she presented the same claim she makes here – that investigation into her mental health history would have revealed she had been diagnosed with Bipolar Disorder and was suffering a "manic state" when she committed the offenses.  (Ex. X, pp. 44-50).  Petitioner contended that this evidence would have supported a "viable defense" of "mental illness;" that the evidence would have been a mitigating factor in sentencing; and that if counsel had advised her of this defense she would not have pleaded no contest and would have gone to trial.  (*Id.*).  Petitioner did not argue in the state circuit court, and does not argue here, that investigation into her mental health history would have produced evidence that she was insane, or incapable of distinguishing right from wrong, at the time she committed the offenses.  (*Id.*).  The state circuit court denied relief on the claim as follows:

> In ground three, Defendant avers that counsel should have investigated Defendant's mental health history, including various records and six witnesses who could have testified to facts regarding her Bipolar Disorder.  Defendant avers that had her attorney investigated her history of Bipolar Disorder, she would have elected to go to trial and to present this defense to the jury.  She alleges that had the jury heard about her mental health problems, they would have weighed the

evidence "different[ly]," which would have resulted in a different outcome for Defendant.[FN 8]

> [FN 8:   Within this ground, Defendant refers to "mitigation" due to the same set of facts; however, she fails to flesh out the allegation with regard to sentencing. Therefore, the portion of Ground three regarding mitigation at sentencing is denied as facially insufficient.]

> This allegation is insufficiently pleaded.  Defendant refers repeatedly to her history of mental health problems and states that her Bipolar Disorder "played a significant role in the crimes."  However, Defendant never alleges that she was insane at the time of the crimes, nor does she allege that she was incapable of distinguishing between right and wrong at the time of the crimes.  Mental illness standing alone does not establish a valid defense in a criminal prosecution.  As the Florida Supreme Court explained, "Expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that as a result the defendant could not distinguish right from wrong is irrelevant." Owen v. State, 986 So. 2d 534, 546 (Fla. 2008).  Therefore, even had counsel been able to prove that Defendant suffered from Bipolar Disorder, that fact could not have formed a valid defense without proof that Defendant was either insane or incapable of determining right from wrong at the time of the crime.  This allegation is insufficiently pleaded and is properly denied.

(Ex. Y, p. 71).

When petitioner appealed the circuit court's order to the First DCA, she argued as "Issue 4" of her initial brief that the circuit court erred when it denied relief on her claim concerning counsel's failure to investigate and prepare a defense based on her Bipolar Disorder.  (Ex. AA, pp. 6-7).  Petitioner's substantive argument, however, was based entirely on a new assertion that defense counsel's investigation into her mental health history would have produced evidence that at the time she committed the crimes she was in "the manic phase of Bi-Polar Disorder" which prevented her

from determining right from wrong and supported an insanity defense (as well as favoring a more lenient sentence).  (Ex. AA, pp. 6-7).  Petitioner apparently varied her argument in an attempt to overcome the deficiencies identified by the circuit court in its summary denial of relief.  The First DCA summarily affirmed the lower court's decision without a written opinion.  (Ex. CC).

The factual basis for Ground Three of petitioner's federal petition reiterates the claim petitioner presented in her amended Rule 3.850 motion before the state circuit court, and does not fault counsel for failing to investigate and prepare an insanity defense based on petitioner's Bipolar Disorder having prevented her from distinguishing right from wrong at the time of her crimes.  (*See* Doc. 1, p. 6; Doc. 24, p. 5).  The question this court must decide is whether petitioner waived or abandoned this claim in her postconviction appeal, as respondent contends.  (Doc. 19, p. 26).

At the time of petitioner's postconviction appeal, the First DCA required an appellant who files a brief when appealing a summarily denied postconviction motion, to address all arguments in her brief that she wishes to preserve for appellate review.  *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *see also Cook v. State*, 638 So. 2d 134, 135 (Fla. 1st DCA 1994).[5]  If an appellant does <u>not</u> file a

---

[5]The Eleventh Circuit has interpreted Florida law differently in the past.  In two unpublished opinions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in her Rule 3.850 proceeding and appeals the circuit court's decision denying her motion, she satisfies the federal exhaustion requirement as to <u>all</u> claims raised in her Rule 3.850 motion, even if she files a brief and fails to address each issue in her appellate brief.  *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899-900, at *2 (11th Cir. 2007).  However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009.  *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc).

brief when appealing, the appellate court is required to investigate all possible means of relief. *Id.* n.1; *see also* Fla. R. App. P. 9.141(b)(2).

Petitioner's initial brief in her postconviction appeal was filed on January 24, 2012, well after *Watson* was decided and after the law of the Fifth DCA changed. (*See supra* note 5). Therefore, to obtain appellate review of the federal claims raised in her summarily denied Rule 3.850 motion, petitioner was required to raise and fully address the merits of those issues in her appellate brief. *See Watson*, 975 So. 2d at 573. *Cf. Daniels v. Sec'y, Dep't of Corr.*, No. 6:10cv200-ACC-KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (recognizing that *Webb* was receded from in *Ward*, but holding that *Webb* was applicable to federal petitioner's claim, because his state postconviction appeal pre-dated *Ward*). In petitioner's appellate brief, she did not raise a substantive argument as to the circuit court's rejection of Claim Three. (Ex. AA). Having thus chosen to argue a different factual basis for her claim on appeal and not the same claim she advanced in Ground Three of both her amended postconviction motion and federal habeas petition, petitioner failed to invoke the state court's established appellate review process as to her claim. *See, e.g., Coleson v. Crews*, No. 3:12cv96/ MCR/EMT, 2013 WL 1197729, at *35-36 (N.D. Fla. Feb. 4, 2013), *Report and Recommendation adopted*, 2013 WL 1197764 (N.D. Fla. Mar. 25, 2013); *Solis v. Tucker*, No. 4:10cv3/SPM/CAS, 2012 WL 4478301, at *5 (N.D. Fla. Aug. 29, 2012), *Report and Recommendation adopted*, 2012 WL 4478782 (N.D. Fla. Sept. 28, 2012); *Wood v. Tucker*, No. 5:10cv200/RS/EMT, 2012 WL 2511428, at *7-8 (N.D. Fla. May 31, 2012), *Report and Recommendation adopted*, 2012 WL 2511323 (N.D. Fla. June 29, 2012); *Green v. McNeil*, No. 1:09cv204/MMP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011), *Report and Recommendation adopted*, 2011 WL 2790180 (N.D. Fla. July 15, 2011).

Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because a second appeal is unavailable and any further attempt to raise the claims in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Thus, Ground Three is procedurally defaulted. Petitioner makes none of the requisite showings to excuse her procedural default. Petitioner's procedural default bars federal habeas review of Ground Three.

Even if this court deemed petitioner to have properly exhausted Ground Three, petitioner still is not entitled to federal habeas relief, because the state circuit court's rejection of her claim, a decision that was affirmed by the First DCA, was consistent with clearly established federal law.

### B.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, set forth above.

### C.     Federal Review of State Court Decision

The state circuit court's decision, which is the last reasoned state judgment rejecting the claim petitioner presents here, rested upon the determination that under Florida law, petitioner's allegation of mental illness (Bipolar Disorder), standing alone, did not establish a valid defense in a criminal prosecution and therefore petitioner failed to show that further investigation by defense counsel into her mental health history would have produced evidence supporting a viable affirmative defense to the charges.[6]  Although an ineffective assistance of counsel claim is a federal

---

[6]Florida law provides:

**(1) Affirmative defense**.– All persons are presumed to be sane. It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane. Insanity is established when:

constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted);[7] *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a

---

(a) The defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1. Did not know what he or she was doing or its consequences; or

2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.

Fla. Stat. § 775.027(1) (2005). Diminished capacity is not a valid defense, and evidence of a defendant's diminished capacity is inadmissible at trial on the issue of criminal intent. *See Chestnut v. State*, 538 So. 2d 820 (Fla. 1989) (holding that diminished capacity is not a viable defense); *Hodges v. State*, 885 So. 2d 338, 352 n.8 (Fla. 2004) ("This Court has held on numerous occasions that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to negate specific intent."); *State v. Bias*, 653 So. 2d 380, 382 (Fla. 1995) ("We continue to adhere to the rule that expert evidence of diminished capacity is inadmissible on the issue of *mens rea*.").

[7]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state-law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (*quoting Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

Here, as in *Alvord*, *Callahan*, and *Herring*, the state court has already answered the question of whether petitioner's Bipolar Disorder would have provided a viable defense to the charges – it would not have. This court must defer to the state court's determination of state law. Counsel's failure to investigate and prepare a defense based on petitioner's Bipolar Disorder cannot be deemed deficient performance, and petitioner cannot show she was prejudiced by counsel's failure to pursue this defense which had no arguable basis for success.

Further, defense counsel presented mitigating evidence of petitioner's mental health history and diagnosis at petitioner's sentencing hearing, in the form of a letter to the court from her treating mental health professionals, Dr. Mary Salid and Amelia

Kazakos, Licensed Clinical Social Worker ("LCSW") (Ex. J, pp. 510-15, 536-38, Ex. K, p. 699). The letter, dated March 12, 2010, stated that petitioner had been engaged in psychotherapy with LCSW Amelia Kazakos since March 25, 2009, and that she had been a patient of Dr. Mary Salib for management of her medication since July 24, 2009. (Ex. K, p. 699). The letter stated that petitioner was being treated for a diagnosis of Bipolar I Disorder, Most Recent Episode Mixed, Severe Without Psychotic Features. (*Id.*). The letter stated that an essential feature of this disorder includes both Major Depressive Episodes and Manic Episodes. (*Id.*). The letter explained that during a manic period, there are "abnormal and persistent elevated expansive moods," which "can certainly contribute to a distorted thought process, unclear perceptions, and the inability to make rational decisions." (*Id.*). Defense counsel's presentation of this letter refutes petitioner's allegation that defense counsel failed to present evidence of her mental health condition for purposes of mitigation at sentencing.[8]

The state court's rejection of petitioner's ineffective assistance claim did not result in a decision that was "contrary to, or involved an unreasonable application of" *Strickland*. Ground Three does not entitle petitioner to federal habeas corpus relief.

---

[8]The letter also supports the state court's determination that petitioner failed to show that further investigation by defense counsel into her mental health history would have produced evidence supporting a viable affirmative defense. The statements of petitioner's treating mental health professionals do not suggest petitioner was legally insane at the time she committed the offenses.

Ground Four        "Trial Counsel was ineffective because he failed to investigate
                   Petitioner's mental health history or to request a psychological
                   evaluation before urging her to tender a no contest plea." (Doc.
                   1, p. 7).

Petitioner alleges the following in support of this claim:

> Due to her mental incompetence, the Petitioner did not understand
> the nature of the charges or the consequences of her plea.  Trial counsel
> could have and should have noticed that Petitioner obviously suffers
> from mental illness or some mental disorder, and counsel should have
> moved to have her examined by a psychological expert.

(Doc. 1, p. 7).  Petitioner asserts she raised this claim in her amended Rule 3.850
motion and on appeal of the circuit court's denial of the motion.  (*Id.*).

Respondent concedes that petitioner presented this claim to the state courts in
her amended Rule 3.850 motion and related appeal, and that the state courts
adjudicated the claim on the merits.  (Doc. 19, pp. 31-33).  Respondent argues that
petitioner is not entitled to federal habeas relief because the state courts correctly
identified and reasonably applied the clearly established federal standard in rejecting
the claim.  (*Id.*, pp. 33-40).

A.      Clearly Established Federal Law

The applicable legal standard is the *Strickland* standard, set forth *supra*.

B.      Federal Review of State Court Decision

Petitioner presented this claim as Ground Four in her amended Rule 3.850
motion.  (Ex. X, pp. 50-55).  The state circuit court adjudicated the claim as follows:

> Next, Defendant avers that her counsel was ineffective for failing
> to request that Defendant be psychologically evaluated.  She alleges that
> counsel told her that the evaluation would be costly for the State and
> decided not to pursue that avenue.

This allegation is facially insufficient.  Defendant has failed to show that she was prejudiced by the failure of her counsel to request that she be evaluated.  Defendant has not alleged that the evaluation would have shown her to have been either insane at the time of the crime or incompetent to stand trial.  Therefore, Defendant has failed to indicate what prejudice flowed to her due to the lack of a psychological evaluation.  This allegation cannot entitle her to relief.

(Ex. X, p. 72).  Petitioner appealed to the First DCA, where she argued as Issue 5 that the circuit court erred in denying her claim that counsel was ineffective for failing to determine her competency to enter her pleas.  (Ex. AA, p. 8).[9]  The First DCA affirmed without written opinion.  (Ex. CC).

Although petitioner's claim is one of ineffective assistance and not a substantive competency claim, the following principles governing a defendant's competency to proceed in a criminal prosecution provide contextual guidance.  The Due Process Clause of the Fourteenth Amendment prohibits the State from trying or convicting a defendant who is mentally incompetent.  *See Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966).  The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed 2d 824 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct.

---

[9]Seizing upon language in the circuit court's order concerning petitioner's failure to allege an evaluation would have shown she was insane at the time of the crimes, petitioner alleged for the first time in her postconviction appeal that had counsel requested a competency evaluation, "[t]his mitigation would have shown the Defendant could not distinguish right from wrong during the crime."  (Ex. AA, p. 8).  Petitioner does not repeat that additional allegation as a basis for federal habeas relief in her present claim (*see* doc. 1, p. 7); accordingly, the court will not address it.

896, 43 L. Ed. 2d 103 (1975); *see also Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L. Ed. 2d 345 (2008).  Florida courts follow this standard.  *See Hernandez-Alberto v. State*, 126 So. 3d 193, 209 (Fla. 2013) (*citing Dusky*, 362 U.S. at 402, *and Drope*, 420 U.S. at 171).

In *Drope*, the Court elaborated as follows:

> The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

The Eleventh Circuit Court of Appeals has applied and expounded upon these standards.  "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted).  A petitioner who makes a substantive competency claim, contending she was convicted while mentally incompetent, "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence."  *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992).  A petitioner who presents "clear and convincing evidence" which creates a "real, substantial and legitimate doubt" as to her competence is entitled to an evidentiary hearing on her substantive competency claim.  *Medina*, 59 F.3d at 1106 (*quoting James*, 957 F.2d at 1573).  However, the

standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) (quotations omitted). Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion. *See Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996).

A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question. *See Medina*, 59 F.3d at 1106; *Card*, 981 F.2d at 484. Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence. *See Sheley v. Singletary*, 955 F.2d 1434, 1438–39 (11th Cir. 1992). In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that she could not effectively consult with her attorney and could not understand the proceedings. *See id.* at 1439.

As the state court reasonably determined, petitioner did not allege, nor did she identify anything in the record suggesting, that a psychological evaluation would have shown either that she was insane at the time she committed the offenses, or that she was incompetent to stand trial or enter a plea. Petitioner's assertions that she did not understand the nature of the charges or the consequences of her no contest plea, and that she was not competent to enter a plea, are conclusively refuted by declarations petitioner made in her written plea agreement and by sworn statements she made during her plea colloquy. Petitioner acknowledged in her written plea agreement that she had never been declared legally incompetent or insane, and that she was entering her plea fully and voluntarily of her own accord and with full understanding of all matters set forth in the charging information and the plea

agreement.  (Ex. H, p. 758).  The written plea agreement set forth each offense and the factual basis and maximum sentence for each.  (*Id.*, p. 756).  The written plea agreement contains a section titled "Certificate of Defendant's Attorney," whereby petitioner's counsel stated:  "I believe he or she fully understands this [plea agreement], the consequences of entering it, and that Defendant does so of his/her own free will.  In my opinion the defendant is mentally competent."  (*Id.*, p. 760).

Further, the transcript of the plea colloquy gives no indication that petitioner lacked the ability to consult with defense counsel with a reasonable degree of rational understanding, or that she lacked a rational and factual understanding of the proceedings against her.  (Ex. I).  To the contrary, petitioner swore under oath that she understood she could be sentenced to 30 years in prison on each of the five first degree felony counts, and 15 years in prison on each of the four second degree felony counts, and that the recommended minimum prison sentence according to her Criminal Punishment Code scoresheet was 229.2 months in prison.  (Ex. I, p. 321-23).  Petitioner acknowledged her understanding that the court would sentence her from 229.2 months to 210 years in prison, unless she presented persuasive mitigation evidence at sentencing.  (*Id.*, pp. 323-24).  Petitioner stated under oath that no one told her she would get less than the recommended minimum sentence.  (*Id.*, p. 324).  The court reviewed the factual basis for each charge and asked petitioner whether she agreed that she engaged in the conduct underlying each charge.  (*Id.*, pp. 324-28).  Petitioner agreed that she committed the underlying offense conduct, but qualified her admission by stating she was "in a manic situation" when she committed the offenses and had since been diagnosed with Bipolar Disorder and was receiving treatment.  (*Id.*, p. 326).  The trial court then engaged petitioner in a specific inquiry to ascertain her understanding of her culpability.  (*Id.*, pp. 326-28).  Only upon petitioner

admitting to the offense conduct and demonstrating a full understanding of the significance of her plea did the trial court accept petitioner's plea as being knowingly and intelligently entered.  (*Id.*).   After the trial court accepted petitioner's plea, defense counsel represented to the court:  "We're also working with her psychologist and psychiatrist as far as mitigation to present to the Court at sentencing."  (*Id.*, p. 330).

At petitioner's sentencing hearing, not only did petitioner expressly admit to committing the charged crimes and profess remorse for her actions (Ex. J, pp. 501-516), but in seeking lenience from the court, petitioner testified under oath:

> [PETITIONER]:  . . . I want to assure the Court and the victims that I am not using the disease I have of Bipolar Disorder as an excuse or in any way to gain any sympathy.  I committed the crime and I'm willing to take all the responsibility.  I'm not asking for my sentencing to be anything except what the Judge feels is fair to all those involved.

(*Id.*, p. 515).

As stated by the Supreme Court in *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977):

> [T]he representations of the defendant, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.*, 431 U.S. at 73-74; *see also United States v. McCord*, 618 F.2d 389, 393 (5th Cir. 1980) ("[A] defendant ordinarily will not be permitted to refute testimony given under oath at a plea or sentencing hearing.").   The record establishes that at the time petitioner entered her plea, she had a rational and factual understanding of the

proceedings and was able to consult with her lawyer about her plea and sentencing with a reasonable degree of rational understanding.[10]

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*,  did not involve on an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "Trial Counsel was ineffective because he failed to object to witness testimony concerning Petitioner's mental condition." (Doc. 1, p. 7).

Petitioner alleges the following in support of this claim:

> During the sentencing hearing, two lay witnesses and a retired psychologist testified about Mitchell's mental condition and her state of mind during the commission of the charged offenses.  The lay witnesses lacked the expertise to form a valid opinion on the issue, and the retired psychologist lacked the factual information necessary to evaluate the Petitioner.  In sum, counsel could have and should have objected on grounds that the probative value of the testimony did not outweigh the potential prejudice.  This failure to object deprived her of a fair and impartial sentencing hearing.

(Doc. 1, p. 7).  Petitioner asserts she raised this claim in her amended Rule 3.850 motion and on appeal of the circuit court's denial of the motion.  (*Id.*).

Respondent concedes that petitioner presented this claim to the state courts in her amended Rule 3.850 motion and related appeal, and that the state courts adjudicated the claim on the merits.  (Doc. 19, pp. 41-43).  Respondent argues that petitioner is not entitled to federal habeas relief because the state courts correctly

---

[10]In fact, the letter from petitioner's treating mental health professionals shows that at the time she entered her plea, she had been receiving treatment with LCSW Kazakos for nearly one year, and treatment from Dr. Salib for nearly seven months.

identified and reasonably applied the clearly established federal standard in rejecting the claim.  (*Id.*, pp. 43-47).

A.    Clearly Established Federal Law

The applicable legal standard is the *Strickland* standard, set forth *supra*.

B.    Federal Review of State Court Decision

Petitioner presented this claim as Ground Five in her amended Rule 3.850 motion.  (Ex. X, pp. 56-61).  The state circuit court adjudicated the claim as follows:

> Defendant's fifth claim is that counsel should have objected to three witnesses giving their opinions regarding Defendant's mental health.  Defendant asserts that none of the three has been qualified as experts and thus should not have been allowed to opine regarding an area requiring specialized training.  Defendant avers that absent these opinions, the Court would have sentenced her to a downward departure sentence.
>
> First, the Court finds that Defendant has failed to prove prejudice.  Defendant cannot show what sentence the Court would have imposed absent the comments to which Defendant refers.  In her motion for mitigation, Defendant specifically set forth as reason to mitigate her sentence almost the precise argument she now advances regarding her mental health.  The Court mitigated her sentence on the ground of need for restitution, specifically finding that Defendant's other arguments were unpersuasive with regard to mitigation.  The Court also noted in the order that the severity of the sentence was designed to impress upon Defendant the severity of her crimes.  Therefore, the Court does not find that Defendant can show a reasonable probability that the Court would have sentenced Defendant to a downward departure sentence had no mention been made of this issue by the three witnesses.
>
> Furthermore, Defendant has failed to prove prejudice specifically with regard to the opinion given by the retired psychologist.  Defendant has not shown that the State would have been unable to lay the proper

foundation for the witness to have been declared an expert, had counsel made the objection.  Therefore, this allegation is facially insufficient.

Finally, the Court would note that even had Defendant pleaded this allegation sufficiently, it would still entitle her to no relief.  The rules of evidence are relaxed in a sentencing hearing and do not apply in the same rigid manner as is proper in a trial setting.  See Charles W. Ehrhardt, Florida Evidence § 103.1 (2008 ed.).  Therefore, Defendant has failed to show that the admission of the testimony was at all improper or that her attorney was ineffective for failing to object.  This allegation cannot entitle Defendant to relief.

(Ex. X, pp. 72-73) (footnotes omitted).  Petitioner appealed, raising this issue as Issue 6 of her initial brief.  (Ex. AA, p. 9).  The First DCA affirmed without written opinion.  (Ex. CC).

Deferring to the state court's determination that admission of the testimony at the sentencing hearing was proper under Florida law, petitioner failed to show that defense counsel's failure to object was deficient, or that there was a reasonable probability the sentencing court would have sustained an objection or pronounced a different sentence if counsel had objected to the testimony.  *See Callahan*, 427 F.3d at 932; *Herring*, 397 F.3d at 1354-55.  The state court's adjudication of this claim was not contrary to, or an unreasonable application of, *Strickland*.  Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six          "The cumulative errors of Petitioner's attorney abrogated her constitutional right to effective assistance of counsel."  (Doc. 1, p. 7).

Petitioner alleges the following in support of this claim:

As evidenced by the preceding grounds for relief, counsel advised Mitchell to tender a plea to charges that violate the constitutional prohibition against double jeopardy.  He failed to have Mitchell's mental health evaluated and failed to investigate the facts of the case and the

potential defenses to the charges.  Taken *in toto*, the cumulative errors deprived Mitchell of her constitutional right to the effective assistance of counsel.

(Doc. 1, pp. 7-8).  Petitioner asserts she raised this claim in her amended Rule 3.850 motion and on appeal from the lower court's denial of the motion.  (*Id.*, p.8).

Respondent concedes petitioner presented this claim to the state courts, and the courts adjudicated the claim on the merits.  (Doc. 19, pp. 48-49).  Respondent argues the Supreme Court has not recognized a claim of cumulative error by a state habeas petitioner; therefore, there is no "clearly established federal law" for purposes of § 2254(d).  (Doc. 19, pp. 48-51).

This court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.  It is enough to say that petitioner has not shown an error of constitutional dimension with respect to any of her federal habeas claims.  Therefore, she cannot show that the cumulative effect of the alleged errors deprived her of fundamental fairness in the state criminal proceedings.  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *see also, e.g.*, *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. Aug. 21, 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of

counsel, but holding that petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial).[11]

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning

---

[11] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.").  The Ninth Circuit recognizes cumulative error claims and expressly recognized *Chambers v. Mississippi*, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  *See Parle v. Runnels*, 505 F.3d 922, 928-29 (9th Cir. 2007).  The Tenth Circuit recognizes cumulative error claims and recognized *Brecht v. Abrahamson*, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  *See Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003).  The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of *Strickland*.  *See Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006); *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001).

of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Tina Dianne Mitchell*, Escambia County, Florida Circuit Court Case Number 09-1710, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of June, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).